THE STATE v. JOHN McDUFFIE et al.

*Fornication and Adultery—Evidence—Burden of Proof—Judge's Charge.*

1. On an indictment for fornication and adultery, the husband of the *feme* defendant is a competent witness against her to prove her marriage to him. *The Code,* § 588.

2. The single state being presumed to exist till the contrary is shown, the prosecution is not called on to prove the defendants are not married. Marriage being peculiarly within the knowledge of the defendants, the burden is on them to show it.

3. It is not error to refuse a prayer for instructions, however correct, when there is no evidence to support it.

4. An exception " to the charge as given" is too general.

This was an Indictment for Fornication and Adultery, tried before *Graves, J.,* at October Term, 1890, of MOORE Superior Court.

It was in evidence that, in the spring of 1889, the defendants lived together in a small house, containing one room, near the west end of Moore County ; that the witness boarded with them two weeks during that spring ; that they slept

together on a bunk, and witness saw them in the bunk together four different times during the two weeks; that he did not eat with them, but slept in the same house; that the next time he saw them together was at a church in Richmond County, in August, 1889, when the male defendant asked witness to go home with him, which witness did, and stayed one night; that defendants were together that night; the house had but one room; that the defendants were not married, as he knew.

Another witness, one Hackney, testified, without objection, that he and female defendant were lawfully married twenty years ago, and had never been divorced.

The defendants introduced no evidence, but asked the Court to instruct the jury—

1. That the jury cannot convict the defendants upon any evidence of their living together in Richmond County, and this evidence is merely admissible for the purpose of corroborating the evidence of the substantive offence alleged to have been committed in Moore County.

2. That the burden is upon the State to satisfy the jury beyond a reasonable doubt that the defendants were not married, and if the State has failed to satisfy the jury beyond a reasonable doubt upon this point, the jury should return a verdict of "not guilty."

The Court refused to give the instructions asked, and defendants excepted.

The Court charged the jury, among other things, that the burden of proving defendants not married was not on the State, but, being a matter peculiarly within the knowledge of defendants, it devolved upon them to show that they were married. The Court further instructed the jury that if they found that the female defendant habitually surrendered herself to the gratification of the male defendant for two weeks, that would be sufficient to constitute the offence of fornication and adultery.

The defendants excepted to the charge as given. Verdict of "guilty." Judgment. Appeal by defendants.

*The Attorney General*, for the State.
*Messrs. W. C. Douglass* and *T. J. Shaw*, for defendants.

CLARK, J.: It is said, in *McKinnon* v. *Morrison*, 104 N. C., 354, affirming prior authorities cited, that "an unpointed broadside challenge to *the charge as given*," is too indefinite to be considered and that "the law is well settled in this respect." That case · has been several times cited and approved.

The first prayer for instructions is legally correct. The State having given evidence of an offence committed in Moore County, any evidence tending to show fornication and adultery between the parties prior to the bar of the statute of limitations, or in another county, would be merely corroborative. *State* v. *Guest*, 100 N. C., 410. But it was not error to refuse a charge, however correct in law, which there was no evidence to support. *Staton* v. *Mullis*, 92 N. C., 623; *Leak* v. *Covington*, 99 N. C, 559. There was no evidence of the defendants "living together in Richmond County." The house to which the witness was invited in August, 1889, is not stated to have been in Richmond County. No inference is to be drawn that it was so located, for the presumption is that the charge of the Court was correct; but, indeed, if any inference is to be drawn, it is that the house was in Moore. The evidence is that the defendants were living in a one-room house on the western edge of Moore in the Spring of 1889, and there being no evidence of a removal when the male defendant invited witness home to the one-room house in August, it not being stated where the house was, there is no presumption that it was not the same house. The fact that the defendants were at a church in Richmond County when such invitation was given does not supply the lack of

evidence on the point, for we know judicially that Richmond County lies partly on the western edge of Moore.

We concur with his Honor in the instruction given in lieu of the second prayer for instruction. Whether defendants were married or not was a matter peculiarly within their knowledge. If married, they could have easily shown that fact and at once have put an end to the proceeding. They were themselves competent witnesses. To call upon the State to prove a negative of this character would virtually repeal the statute. Parties might come to this State from other States or foreign countries, or, indeed, from distant counties in this State. The State could not possibly prove, in many cases, that the parties had at no time and in no place ever been married. This construction would license concubinage. On the other hand, it is no hardship on the defendants, when so charged with a scandalous offence, to prove that they live in honorable wedlock. A similar rule, and for the same reason, prevails in indictments for retailing without license. If the retailing is shown, the burden is on the defendant to show that he has license so to do. *State* v. *Morrison*, 3 Dev. 299; *State* v. *Emery*, 98 N. C., 668; *State* v. *Sorrell*, 98 N. C., 738.

"The State need not prove that the defendants are unmarried. It will be presumed such is the case till defendants offer proof to the contrary." 8 Am. & Eng. Law, 563; Bishop Statutory Crimes, section 693.

Two other reasons are also to be given for this rule. In a recent case in New Jersey for this offence it is said: "The single state is natural, and during early life, the only possible one, nor is there any period at which it is necessarily terminated or merged in marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which exists in youth continues. Therefore, until drawn in question, no affirmative testimony on this point was required from the prosecution." *State* v.

*Gaunt*, 50 N. J. L., 491 (1888); *People* v. *Colton*, 2 Utah, 457. And, again, while the burden is on the State to prove the *res gestæ* of the offence, marriage or non-marriage is no part thereof. It is a *status* which exists prior to such acts and independently of them. The single state existing first in the absence of evidence is presumed to continue, and if it has been changed to the marriage state between the defendants, it is a matter peculiarly within their knowledge and there is no good reason to call upon the State to prove a negative.

In civil cases the party who claims property, legitimacy or benefit under and by virtue of a marriage, has the burden of proving it. The objection is urged that the adoption of the same rule in criminal cases would enable grand juries to indict any married couple in the State. This is to presume that grand juries and Solicitors are corrupt, or actuated by malice. In practice it will be found, as has been the experience in regard to retailing without license, that those who are dealing legitimately have no motive for concealment, and that grand juries and Solicitors will respect the limitations of their duty. Indictments will not be found except in those cases in which an investigation is demanded by the surrounding circumstances, and in those very rare cases in which it will be found that the indicted parties were, in fact, married, it is better that they should show their *status* as married people, a fact which is best known to themselves, than that justice should fail in numberless cases by the State being burdened, not with proving the *res gestæ* of the offence, but with tracing the previous lives of the parties to show non-marriage, which would often be utterly impracticable. The experience of the lower Courts is that, in ordinary cases, the marriage of the defendants is, in fact, scarcely ever relied on, but the defence is that the parties do not cohabit, the burden of proving which lies upon the State.

The defendants except here, for the first time, to the evidence of the witness who testified that he was the husband of the *feme* defendant, and rely upon *State* v. *Ballard*, 79 N. C., 627, which holds that while an exception to evidence is waived if not taken at the time, yet, in criminal cases, if evidence rendered incompetent by statute is admitted without objection, the admission may still be assigned as error. It is not necessary that we call in question this rule, for, if we should concede its correctness, it has no bearing. The evidence, if objected to in apt time, would have been properly admitted. *The Code*, § 588, makes the husband or wife incompetent, and not compellable, "to give evidence for or against the.other * * * in any action or proceeding on account of adultery, except to prove the fact of marriage." Indeed, the fact of the marriage is not within the reason of the rule of public policy which makes the husband or wife incompetent to prove any transactions after marriage. In its nature marriage is intended to be not confidential, but public and notorious.

SHEPHERD, J., *dubitante*.            Affirmed.