STATE v. LOUIS CAVETT.[1]

May 6, 1927.

No. 25,982.

**When state is not required to prove that the woman is unmarried.**

1. In a prosecution for fornication, where it appears that the woman was not the wife of the defendant, it is not necessary for the state, in the first instance, to prove the single state of the woman.

**Charge to jury.**

2. An instruction, which failed to require absence of reasonable doubt as a prerequisite to the final inference of guilt, is cured by the context stating explicitly that all the elements of the offense must be established beyond a reasonable doubt.

**Erroneous exclusion of character evidence did not prejudice defendant.**

3. It appearing plainly that no reasonable consideration of the evidence could result in a doubt of defendant's guilt, and also that the jury must have understood that the character evidence offered would have been favorable to defendant, the erroneous exclusion of the latter is held error without prejudice.

Criminal Law, 16 C. J. p. 1053 n. 93; 17 C. J. p. 333 n. 95.
Fornication, 26 C. J. p. 991 n. 8, 9 New.

Defendant appealed from an order of the municipal court of Minneapolis, Fosseen, J., denying his motion for a new trial. Affirmed.

[1]Reported in 213 N. W. 920.

*Sam J. Levy* and *W. T. Francis*, for appellant.

*Clifford L. Hilton*, Attorney General, *Neil M. Cronin*, City Attorney, and *Arthur P. Jensen*, Assistant City Attorney, for the state.

STONE, J.

Convicted of the crime of fornication, defendant appeals from the order denying his motion for a new trial.

1. The first assignment of error challenges the introduction of some hearsay evidence that the woman in the case was single. There is no other evidence that she was unmarried. It appears clearly enough that she was not married to defendant. Without evidence other than of the intercourse and that the parties were not husband and wife, the prima facie case for the state is complete. "The single state is, however, the natural, and, during early life, the only possible one; nor is there any period at which it is necessarily terminated or merged into marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which existed during [pubescence] continues." Once it appears that the parties are not married to each other, the state is not in the first instance required to go further and prove that the woman is unmarried. Gaunt v. State, 50 N. J. L. 490, 14. Atl. 600; Territory v. Jaspar, 7 Mont. 1, 14 Pac. 647; State v. McDuffie, 107 N. C. 885, 12 S. E. 83; State v. Slattery, 74 N. J. L. 241, 65 Atl. 866. The presumption necessary to that conclusion is not indulged in Georgia. Bennett v. State, 103 Ga. 66, 29 S. E. 919; Neil v. State, 117 Ga. 14, 43 S. E. 435; 26 C. J. 991. The parties not being husband and wife, their offense is either fornication or adultery and there is no reason to require the state, in order to prove the first and less serious, to negative the latter and more serious offense.

2. The jury was charged that, while direct proof of the offense was not necessary, "it is sufficient to show beyond a reasonable doubt circumstances from which the jury might reasonably infer the guilt of the defendant." The latter proposition, standing alone, would be erroneous because an inference of guilt does not support a verdict of guilty unless the inference itself is deducible from all the

evidence beyond a reasonable doubt. But the instruction just quoted was followed by one requiring proof, beyond a reasonable doubt, of "two things before you can find the defendant guilty," the first being the single status of the woman and the other the act of sexual intercourse charged in the complaint. The court then said that "if the State fails to prove beyond a reasonable doubt either of the two issues, then it is your duty to find the defendant not guilty." That charge is correct and plain. The jury could not have misunderstood and so the charge taken as a whole must be considered without prejudicial error.

3. Defendant called several character witnesses and sought to prove that his reputation was that of "a decent, honest and law-abiding citizen." The excluded question was whether the witnesses knew his reputation in that respect "in the community in which he lives." The objection was supposed immateriality, lack of foundation and that the question was too general. It already appeared that the witnesses had employed defendant as a yardman and caretaker around their homes for periods ranging from 12 to 14 years. Defendant's home was in another section of Minneapolis but for the period indicated he had spent his working hours each day in the community where the witnesses lived. They had already vouched for him as "steady and reliable" in his work.

It would have been approved practice to have allowed preliminary cross-examination to test further the competency of the offered evidence. In the absence of that, we think it was error to exclude the testimony. The reputation of defendant "for being a decent, honest and law-abiding citizen" in the community of householders where he had worked daily for 12 years or more was relevant and material in his defense within the rule of State v. Nelson, 166 Minn. 371, 208 N. W. 129.

That conclusion is not altered because the reputation asked for was not, strictly, that for morality nor that at the place of his residence rather than his work. The questions could well have been more specific, particularly as to the quality of character involved. But the fact remains that a good reputation of the kind

indicated, general though it may be and confined to the place of a man's work rather than his residence, is relevant on the question of his guilt or innocence. We are therefore unable to escape the conclusion that the exclusion of the character evidence was error. It reflects a hypercritical attitude which has no support in reason and is too much disposed to encumber judicial search for truth with technicalities which obstruct rather than facilitate.

It does not follow however that the error was prejudicial. The evidence of guilt was plenary and convincing. The two police officers who made the arrest testified to circumstances which proved defendant's guilt to the point of demonstration. Their story has no circumstance of inherent contradiction or improbability. It includes what amounted to an admission of guilt by defendant, who later made a direct confession to a third member of the Minneapolis police who was a witness against him. Defendant's testimony on his own behalf, in so far as it denies the offense, is obvious prevarication. No rational mind functioning judicially can consider the evidence in this regard without being forced to the conviction, beyond all possible doubt, that defendant is guilty.

It appears further that each of the four witnesses called by defendant to testify as to his good reputation were men of families who had employed him long and continuously as already stated. The record shows that no one of them, on the question of reputation, could or would have answered unfavorably to defendant. It must have been plain to the jury that each of the witnesses would have answered in the affirmative the final question as to reputation to which the objection was sustained. But putting that question entirely out of the case, the long-continued employment of defendant by the witnesses in question indicated conclusively that they had implicit confidence in him so far as general character goes, else they would not have employed him for so long in a position where he was in more or less constant contact with the members of their households. It seems clear therefore not only that no amount of character evidence would have helped defendant but also that as a practical matter he had most if not all the benefit of that actually offered. Hence the erroneous ruling on the final question as to defendant's

reputation was, under the special facts of this case, error without prejudice. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L. R. A. (N. S.) 839.

That would not be our conclusion if the proof were wholly circumstantial or if, for any reason whatever, it appeared that reasonable consideration of the evidence could result in a reasonable doubt of defendant's guilt. True, the jury was the judge of the credibility of the witnesses. But it does not follow that in taking the view of the evidence above stated we are trespassing upon the province of the jury. There can be no adequate or sensible review, in such a case as this, without a consideration of the evidence. Our function is to review and our duty to affirm unless the defendant has been deprived of some right to his prejudice. How can it be said that he has been prejudiced when it appears not only that he had practically all the benefit of the excluded evidence but also that the admission of the excluded answers could not have helped him in the least? To conclude prejudice possible would premise a densely ignorant or hopelessly corrupt jury. The necessity of such a premise for its support forces out of view the suggested conclusion.

Order affirmed.

WILSON, C. J. (dissenting).

Defendant is entitled to a fair jury trial. Concededly, competent and material evidence was excluded. It is for a jury to pass upon this man's guilt or innocence. We cannot tell what the effect is of an erroneous ruling excluding evidence which defendant was entitled to have before the jury. For this court to say that the testimony of three policemen and the circumstances establish his guilt as against his own sworn denial is to deprive him of his liberty without due process of law.

Evidence of good character may be sufficient to establish a reasonable doubt of guilt. State v. Dolliver, 150 Minn. 155, 184 N. W. 848; State v. Nelson, 166 Minn. 371, 208 N. W. 129; State v. Sauer, 38 Minn. 438, 38 N. W. 355; State v. Hutchison, 121 Minn. 405, 141 N. W. 483. The exclusion of such powerful possibilities should not be so thrust aside. A juror is the best judge of his own feelings as

to whether the evidence proves a defendant guilty beyond a reasonable doubt. Many verdicts are sustained, in civil actions, upon the testimony of one witness when three or more witnesses testify to the contrary. Certainly this accused man standing alone needed the help of the excluded evidence and with it he was entitled to have a jury pass upon his credibility and decide, in accordance with our system of jurisprudence, whether they would believe the evidence of the state as against defendant's evidence and find that his guilt had been established beyond a reasonable doubt.

DIBELL, J.
I concur with the Chief Justice.