# STATE v. HILLIARD BARNARD.[1]

February 1, 1929.

No. 27,029.

See 28 R. C. L. 449, 453; 5 R. C. L. Supp. 1539, 1540; 7 R. C. L. Supp. 992.

[1]Reported in 223 N. W. 452.

■

*C. O. Dailey* and *S. Bailey Wilson, Jr.* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, *T. O. Streissguth,* County Attorney of Brown County, and *Frank E. Morse,* County Attorney of Blue Earth County, for the state.

OLSEN, C.

Defendant was convicted of forgery in the second degree and appeals from the judgment of conviction.

■ It is urged that the evidence is insufficient to sustain the conviction. That a series of nine or more checks, purporting to be made by H. M. Noack & Sons, at Morton, Minnesota, were forged and negotiated in Brown and neighboring counties in this state, is undisputed. Most of the checks were uttered and negotiated during the period from March 8 to March 12, 1928. The charge is that this defendant uttered and disposed of one of the checks at New Ulm, Minnesota, on March 12.

Defendant and his companion, Joseph Cuddy, came from Mankato to Cobden, a small village in Brown county, about February 18. They are young men of 24 and 25 years of age. Defendant's home is at Good Thunder, and Cuddy's home at Mankato, in this state. At Cobden they stayed with one Ben Zieske, the proprietor of a general store. They were not regularly employed but did some collecting for Zieske in the surrounding country. They came to Cobden in a Ford roadster owned by defendant, and spent most of their time traveling around together in this car, making collections for Zieske in the country and visiting cities and villages in surrounding territory. They were at times absent overnight. They continued in this manner until March 24 and were then arrested at Morgan, in Redwood county, each charged with passing one of the forged checks. They were tried together, on separate charges, and each convicted. Forged checks of this series were passed at

New Ulm, Springfield, Mankato, Willmar and Litchfield, all located within distances varying from 7 to 80 miles from Cobden and readily accessible by automobile travel. The mode of operation was to go into a place of business and buy goods to the amount of a few dollars, tender one of the checks for a somewhat larger amount in payment and receive the balance in cash. Two witnesses positively identified defendant as the man who passed the check at New Ulm, and one witness from each of two places at Willmar so identified him as the person who passed one of the checks at each of their places. Cuddy was positively identified as the person who passed one check at Mankato and one at each of two places at Springfield. There was other evidence of resemblance where identification was not positive, and as to clothing worn by the men and like clothing found in their possession. There was also evidence tending to identify the handwriting on the checks as that of defendant. Defendant denied that he had forged or passed any of the checks, and presented evidence tending to show that he was not at the places where the checks were passed at the time they were passed, and presented evidence of good reputation. There is ample evidence to sustain the conviction.

■ It is urged that the court erred in sustaining objections to and striking out the testimony of the witness Griffin as to defendant's good reputation. The evidence was excluded on the ground of insufficient foundation. Testimony as to good reputation is necessarily a conclusion based upon what the witness has heard or not heard, or from other facts within his knowledge. It is largely within the discretion of the court to determine whether a sufficient foundation has been laid. State v. Green, 153 Minn. 127, 189 N. W. 711. The qualification of a character witness is largely for the trial court. State v. Nelson, 166 Minn. 371, 208 N. W. 129. We cannot say on the record presented that there was reversible error here.

The same may be said as to the exclusion of testimony of the witness Bruske. In that case also, the testimony of the witness that he had heard no talk at all about defendant's reputation and had

never heard any talk of any trouble before this charge does not appear to have been stricken and apparently was as far as the witness could go.

■ Defendant's father was a witness for him. This witness testified to the good reputation of defendant. In the course of his examination, an offer was made to prove "that the defendant Barnard is of such character that his natural inclinations and disposition is to obey the law and not to violate or transgress any law; that he is kind; that he is in fact a man of good morals, and that he in fact observes and obeys the laws of the state." Objections to the offer were sustained. The defendant has the right to introduce evidence of moral qualities having a definite relation to the crime with which he is charged. State v. Dolliver, 150 Minn. 155, 184 N. W. 848. He may introduce evidence as to his good disposition, as a peaceable and lawabiding citizen, by any witness who knows what it is. State v. Lee, 22 Minn. 407, 21 Am. R. 769; State v. Humphrey, 173 Minn. 410, 217 N. W. 373. The moral qualities having a definite relation to the crime here charged were primarily honesty and integrity, or general good moral character. Whether defendant was kind or not was probably immaterial to the issue. That "he in fact observes and obeys the laws" would seem to open up a wide field.

The court and county attorney, in the trial of a criminal case, should not too strictly apply to the evidence offered by defendant technical rules as to the reception thereof. Where the foundation for evidence offered by defendant is such that the court may exercise discretion as to receiving it, the better practice is to exercise that discretion in defendant's favor. Where an offer of evidence is defective, the better practice is for the court to indicate to defendant's counsel the defects therein, and so give counsel opportunity to correct the offer. The state will generally suffer no prejudice by such practice, and it will tend to avoid appeals and reversals in criminal cases.

We feel that the court should have been more liberal and should have permitted the defendant, under the offer made, even if defective, to present such evidence of disposition as properly had a bearing

upon the issue. But there was evidence received as to defendant's past history, schooling and occupation, and as to his prior good reputation; and the state, except as to the crime now charged, presented nothing to the contrary. The proof of guilt was strong and convincing. Prejudice to defendant does not appear. If the evidence offered had been received a fair-minded jury could not reasonably have reached a different verdict. A reversal should not follow. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L.R.A.(N.S.) 839; State v. Morris, 149 Minn. 41, 182 N. W. 721; State v. Cavett, 171 Minn. 222, 213 N. W. 920; State v. Humphrey, 173 Minn. 410,. 217 N. W. 373.

■ The defendant was called as a witness and testified in his own behalf. He expressly denied that he had written any of the forged checks or that they were in his handwriting. He later introduced a letter as a sample of his handwriting. On cross-examination, the county attorney asked him to write certain words and names on a piece of paper. He did so, and the writing so done by him was received in evidence and used for comparison of handwriting. The only objection made was one by defendant's counsel that this was improper. By voluntarily becoming a witness in his own behalf and testifying as stated, it is generally held that the defendant waives his privilege of refusing to answer questions relating to the crime charged, even if incriminating; and he may be cross-examined as to any matter pertinent to the issue, even if tending to show the commission of another crime. State v. Wood, 169 Minn. 349, 211 N. W. 305. By expressly denying that any of the checks were in his handwriting and thereafter introducing specimens of his own handwriting, it would seem that defendant fully opened up the issue, and that it was not improper for the county attorney on cross-examination to ask him then to make samples of his writing and use the same as evidence. The objection interposed was in any event insufficient to raise the question of privilege or the question of furnishing evidence against himself.

■ A request to charge that evidence of good character may be sufficient to establish a reasonable doubt as to defendant's guilt

was refused. The request was a correct statement of the law but was covered in the general charge. The court correctly charged the jury as to the presumption of innocence and that, in case of a reasonable doubt as to defendant's guilt, he was entitled to an acquittal, and then charged as to evidence of good reputation and that the presumption is that one whose reputation is good is less likely to commit a crime than one whose character is not good. The court then gave one of defendant's requests as follows:

"Evidence of good character has been introduced by the defendants. It goes to the probabilities of defendants' guilt, and bears upon the general question of guilty or not guilty. It should be considered by you with all the other evidence in the case. It is admissible to support the original presumption of innocence. It may tend to establish innocence. It alone may raise the doubt of guilt which might not otherwise exist."

The only criticism that could be made of these instructions is that in the last sentence thereof, instead of the expression "the doubt of guilt," the court should have said "the reasonable doubt of guilt;" but read in connection with the parts of the charge already given the jury could not have been misled. The only reasonable construction was that "the doubt of guilt," so used, meant and referred to "reasonable doubt," already defined and spoken of in the charge. Standing by itself the word "doubt" is broader than the expression "reasonable doubt," and in that sense might be more favorable to defendant than the request denied.

The other assignments of error have been examined and are found not important and not to present any errors.

Judgment affirmed.

WILSON, C. J. took no part.

HILTON, J. (concurring).

I concur in an affirmance but think that defendant's offer of proof as to character should have been granted. One who "observes and obeys the laws," in other words, is a law-abiding citizen, should be permitted to show it when on trial charged with the commission

of a crime. State v. Lee, 22 Minn. 407, 21 Am. R. 769; State v. Humphrey, 173 Minn. 410, 217 N. W. 373.

The officer making the arrest testified that he found a loaded revolver in defendant's car. This was denied by defendant. The opinion, on the authority of the cases therein cited, states that evidence as to good disposition as a peaceable citizen is proper. I think the same is true as to his being kind. (See synonyms of "kind.") A peaceable, kind individual is not likely to travel around the country armed with a loaded revolver, committing various felonies (even though they be forgeries and uttering forged paper). The jury was justified in finding that defendant did all these things, but he had a right, in my opinion, to the benefit of the excluded testimony. If error was committed by the exclusion it was not of vital consequence, at least not affecting materially his substantial rights. State v. Nelson, 91 Minn. 143, 97 N. W. 652.

